299 F.2d 692
 43 P.U.R.3d 153
 SOCONY MOBIL OIL COMPANY, Inc., Appellant,
v.
BROOKLYN UNION GAS COMPANY et al., Appellees.
The OHIO OIL COMPANY, Appellant,
v.
BROOKLYN UNION GAS COMPANY et al., Appellees.
BROOKLYN UNION GAS COMPANY et al., Appellants,
v.
TRANSCONTINENTAL GAS PIPE LINE CORPORATION et al., Appellees.
TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Appellant,
v.
The OHIO OIL COMPANY and Socony Mobil Oil Company, Inc., Appellees.
 Nos. 18941-18944.
 United States Court of Appeals Fifth Circuit.
 Feb. 14, 1962, Rehearing Denied May 21, 1962.
 
 Thomas Fletcher, John Daniel, Vinson, Elkins, Weems & Searls, Houston, Tex., for Socony Mobil Oil Co., Inc.
 Richard L. McGraw, Austin C. Wilson,
 James B. Henderson, Richard L. McGraw, Austin C. Wilson, Houston, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel, for Transcontinental Gas Corp.
 F. L. Andrews, W. M. Streetman, Lewis T. Sweet, Jr., Houston, Tex., Andrews, Kurth, Campbell & Jones, Houston, Tex., of counsel, for Brooklyn Union Gas Co., et al.
 Clayton L. Orn, Robert M. Vaughan, Findlay, Ohio, W. Hume Everett, J. O. Terrell Couch and Warren B. Leach, Jr., Houston, Tex., for Ohio Oil Co.
 Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.
 HUTCHESON, Circuit Judge.
 
 
 1
 These appeals from summary judgments of the United States District Court for the Southern District of Texas present many interesting questions of law. The district judge, in a memorandum opinion,[1] set forth these questions clearly and dealt with them in a thorough and completely correct way. It would serve no useful purpose, therefore, for us to set the questions out or discuss them in detail here. It is sufficient to say that it is our view that the judgments should be affirmed throughout upon the opinion of the district judge.
 
 
 2
 Summed up, the appeals present on the side of the appellants, Socony Mobil Oil Company, Inc., Et Al, the primary contentions: (1) that because of a stay order entered by this court in Magnolia Petroleum Co. v. Federal Power Commission, 236 F.2d 785, in an appeal from Order No. 174-A of the Federal Power Commission, the rates collected by the appellants were legal and proper, and when the appeal was decided against the appellants by a dismissal and the stay order lapsed, the rates collected in the meantime could not be attacked and no refunds could be required as to them; and (2) that the proof failed to make out a case for restitution.
 
 
 3
 As the opinion of the district judge points out, this view proceeds from a misapprehension of the nature and effect of the stay order and of the state of the applicable law. As he also points out, this court dismissed the appeal in which the stay order was entered on the ground that Order No. 174-A, which was attacked by the appellants in that case, was not an appealable order, and this court did not, either in the order dismissing the appeal or in any other order entered by it, undertake to in any way validate the rates collected by the appellants. As he further points out, the rates paid during the pendency of the stay order were invalid and unlawful rates not merely because of the order of the Commission but because of Section 4 of the statute controlling and regulating gas rates and the regulations of the Commission promulgated as Orders Nos. 174 and 174-A. This section requires, in order for a rate to be legally effective, that the proposed rate be filed with the Commission, and unless there is such filing and the statutory time for the Commission's examination and approval has elapsed without disapproval, no proposed change of rate may be lawfully made, collected, and retained.
 
 
 4
 Here the evidence is undisputed that the proposed rates collected by the appellant, the recovery back of which was ordered by the district judge, were not filed with the Commission until long after they were collected, and equally undisputed that this court did not authorize, or attempt to authorize, the collection of any particular rate. It merely provided a stay of Commission action during the pendency of the appeal, and when the appeal was dismissed by this court and review was later denied by the Supreme Court, the stay order expired and lapsed, and the parties to the collection and payment of the rates in question were then remitted to the statutory law to determine their rights on the issue of restitution.
 
 
 5
 In addition to the attack on the judgments as unwarranted because the rates collected by them had been collected under a valid contract, appellants attack the judgments as erroneous because the claims against them were barred by limitation.
 
 
 6
 The district judge dealt carefully with this claim and we think correctly denied it. As the appellees correctly state in their brief, the court below did, and we may, decide the merits of this controversy by recognizing and determining the lawful rates on June 7, 1954. By finding what were the lawful rates in this case, the court below was not fixing any just or reasonable rate or granting reparations. Its action was solely ancillary to determining, the effect of the stay orders and their dissolution, and of the failure of appellants to file their proposed changes of rates as required by statute and the regulations of the Commission. The rate settlement between plaintiffs and Transcontinental does not preclude such a determination on grounds of estoppel because the refund clause of the agreement between Transcontinental and Brooklyn plainly declared that there might be refunds and that if there were, they would belong to the consumer plaintiffs.
 
 
 7
 Plaintiffs were entitled to recover on the merits because the only lawful rates from June 7, 1954, until appellant received approval from the Federal Power Commission of different rates were the contract rates in effect on June 7, 1954. Under Section 4 of the Natural Gas Act, 15 U.S.C.A. 717c and Order 174-A, the contract rates in effect on June 7, 1954, the date of the Phillips decision (Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035), were the only lawful rates which could be collected until changed by filing the proposed changes with the Federal Power Commission as required by statute. Any rate changes provided for in the contract, whether by virtue of a 'favored nations' or 'escalation' clause or otherwise, constitute rate changes under the Natural Gas Act and are forbidden in the absence of compliance with the filing provisions of the Act and the regulations of the Commission.[2]
 
 
 8
 The stay orders issued by the Court of Appeals for the Fifth Circuit at the request of Mobil and Ohio et al did no more than preven the Commission from interfering with the collection by Mobil and Ohio et al of rates above the June 7, 1954 level. When these stay orders were dissolved, and Mobil and Ohio et al filed their contracts with the Commission and the filings were accepted at the June 7, 1954, level, a duty of restitution arose, requiring Mobil and Ohio et al to restore to Transcontinental and/or plaintiffs amounts collected during the pendency of the stays in excess of the June 7th rate.[3]
 
 
 9
 The stay orders cannot be construed as protecting Mobil and Ohio at al in the retention of the overcharges for two reasons: (1) this court does not have the authority to establish rates, and to construe the stay orders as approval of the increased rates would be to impute to the court the doing indirectly what the court could not do directly; and (2) although the stay orders, until dissolved, supported Mobil and Ohio's et al action in collecting the proposed rate for the time being, in the sense that the Commission was restrained from preventing them from making such collections, the stay orders did not attempt to, they could not, obviate the necessity of filing them in accordance with the statute and the regulations of the Commission. United Gas Pipeline Co. v. Mobile Gas Service Corp., 350 U.S. 332, at 347, 76 S.Ct. 373, 100 L.Ed. 373. The stay orders neither by their terms nor by implication provided, nor could they have provided, that the statute and the regulations of the Commission, legislative in nature as they were, would not have to be complied with in order to effect a change in the rates, and nothing in the stay orders stated or implied that Mobil and Ohio et al could retain monies collected during the pendency of the stay orders on rates put into effect without complying with the statute and regulations.
 
 
 10
 A stay order does not adjudicate rights. It merely preserves the status quo. The status quo here was that until the proposed changes in rates by escalation or otherwise, were filed with the Commission, they could not be legally collected, and that when the stay expired all unlawful exactions must be restored. At the time the stay orders were issued, the lawful rates established, by virtue of the Act and the regulations of the Commission, were the contract rates of June 7, 1954. The stay orders did not deal with, or attempt to change, this situation at all. This court did not, indeed could not, authorize an increase in the lawful rates. Such authority could be granted only by a compliance with the statute and regulations promulgated under its authority. The stay orders could nto have had any effect on the statutory scheme. We think the court can not do better than to adopt the opinion of the district judge and affirm his judgments on the basis of it.
 
 
 11
 Another question raised in the case by the defendants-appellees arises out of the fact that, while the contract was made by the appellants with the Transcontinental Gas Pipe Line Corporation, the suit was brought by and for the benefit of Transcontinental's customers with Transcontinental intervening. Appellants-defendants, therefore, insist that there is no privity of contract between them and these customers and that there is no right of action in the customers to recover from them.
 
 
 12
 We think the district judge was right in respect of these contentions under the record in this case, which contains a notation in an order of the Commission in connection with the settlement made by Transcontinental with the plaintiffs, that any recoveries back which Transcontinental might be entitled to should be for the benefit of its customers. On the pleadings and the undisputed facts in this case, plaintiffs were real parties in interest and entitled to judgment as such.
 
 
 13
 In addition to these questions, there is a question which is brought up on the appeal of plaintiffs in the suits. This question is whether the judgment was wrong in not allowing interest on interest. These appellants insist that the judgment, which was for the amount of the unlawful rates collected without interest up to but not after the date of the judgment, was erroneous, and that judgment should have been for the amounts collected with interest to the judgment date, and this entire amount should have then borne interest from the date of the judgment.
 
 
 14
 The district judge was of the opinion that to allow a judgment such as this would be to allow compound interest and that the prevailing Texas rule, as stated in McDaniel v. Miller, Tex.Civ.App., 317 S.W.2d 546, prevents this. The appellants, while conceding that the state of the law in Texas is confusing on this matter, argue that the McDaniel case is not controlling authority in Texas; that for its particular facts, the case was properly decided, but that Frazier v. Campbell, 5 Tex. 275 and Miner v. Parish Exchange Bank, 53 Tex. 559, denied the contrary.
 
 
 15
 While it is true that there is considerable confusion in the Texas decisions, we are inclined to follow Judge Ingraham's view[4] that the McDaniel case is authoritative here, and we are, therefore, of the opinion that the judgment should be affirmed on the plaintiffs' appeals as well as on the defendants' appeals.
 
 
 16
 We think the case was well tried throughout and, no substantial error appearing, the judgments are
 
 
 17
 Affirmed.
 
 
 
 [1]
 Brooklyn Union Gas Company et al. v. Transcontinental Gas Pipe Line Corp. et al., (6-29-60) 201 F.Supp. 673
 
 
 [2]
 Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 246 F.2d 915; Bel Oil Corp. v. Federal Power Commission, 5 Cir., 255 F.2d 548; Mississippi Power & Light Co. v. Memphis Natural Gas Co., 5 Cir., 162 F.2d 388
 
 
 [3]
 National Gas Pipeline Co. v. Harrington, 5 Cir., 246 F.2d 915; Arkadelphia Milling Co. v. St. Louis S.W.R. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517
 
 
 [4]
 Brooklyn Union Gas Company et al. v. Transcontinental Gas Pipe Line Corporation et al., D.C. (11-23-60) 201 F.Supp. 679