**UNITED GAS PIPE LINE COMPANY**

v.

**SOCONY MOBIL OIL COMPANY, Inc.**

**Civ. A. No. 9212.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Aug. 29, 1963.

Vernon W. Woods, and Willis L. Meadows, Wilkinson, Lewis, Woods & Carmody, Shreveport, La., for plaintiff.

Cullen R. Liskow, Liskow & Lewis, Lake Charles, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

July 16, 1954, the Federal Power Commission issued an order pursuant to the Natural Gas Act establishing the contract rates in effect on June 7, 1954, (the date of the decision in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035) as the only lawful rates that could be collected by a natural gas company selling gas in interstate commerce until the rates were changed in accordance with procedures established by the Act.

In November, 1954, defendant[1] obtained from the Fifth Circuit Court of Appeals an order staying the Federal Power Commission order in so far as it applied to defendant. Periodic price increases provided in the contracts with United[2] were paid to defendant even though they were not authorized by the Commission. February 1, 1957, the stay order was dissolved. Subsequently defendant was unsuccessful in an attempt to obtain approval of the increased rates and have them apply retroactively.

United brings this action to recover the alleged overpayments made to defendant, in accordance with the contracts, but in violation of the Commission order. United contends that when defendant obtained the stay order it assumed a legal obligation to restore any excess charges it collected under protection of the order should it subsequently be vacated; that this is a quasi contractual obligation; and, therefore, the ten-year prescriptive period of Article 3544 of the LSA Civil Code applies. For the purposes of this motion, defendant asserts that it unlawfully acquired the excess payments in violation of the Natural Gas Act and the Commission order; that the alleged violation is an offense or quasi offense, and thus this action is subject to the one-year prescriptive period of LSA Civil Code Article 3536.

■ Considerable confusion may be avoided if it is recognized at the outset that under Louisiana law one set of facts may result in two causes of action, one of which may be delictual and the other quasi contractual. Iberville Land Co. v. Amerada Petroleum Corp., 141 F.2d 384 (C.A.5, 1944); Kramer v. Freeman, 198 La. 244, 3 So.2d 609 (1941). We must decide, therefore, whether the complaint states a cause of action based upon an of-

fense, or upon a quasi contract, or upon both. If both, then we must find under which plaintiff seeks relief.

For the purpose of this motion, the parties admit the cause of action alleged is substantially the same as that alleged in the Brooklyn Union case,[3] but they disagree as to what kind of action that was. Though one isolated statement by the district judge there indicates the excess payments were lawfully made while the stay order was effective, the opinion as a whole and the Fifth Circuit Court of Appeals decision make it evident that the increased rates were unlawful. Judge Hutcheson, speaking for the Court in Socony Mobil Oil Co. v. Brooklyn Union Gas Co., 299 F.2d 692 (C.A.5, 1962), stated:

"* * * As he [the district judge] further points out, the rates paid during the pendency of the stay order were invalid and unlawful rates * * *.

"* * * this court did not authorize, or attempt to authorize, the collection of any particular rate. It merely provided a stay of Commission action during the pendency of the appeal, * * *.

\* \* \* \* \* \*

"* * * the only lawful rates from June 7, 1954, until appellant received approval from the Federal Power Commission of different rates were the contract rates in effect on June 7, 1954. * * *

\* \* \* \* \* \*

"A stay order does not adjudicate rights. It merely preserves the status quo. The status quo here was that until the proposed changes in rates by escalation or otherwise, were filed with the Commission, they could not be legally collected, and

---

1. Throughout this opinion defendant, Socony Mobile Oil Company, Inc., will be referred to as "defendant." The stay order referred to was actually obtained by defendant's predecessor, Magnolia Petroleum Company. See Magnolia Petroleum Co. v. Federal Power Commission, 236 F.2d 785 (C.A.5, 1956).

2. In this opinion, plaintiff, United Gas Pipe Line Company, will be referred to either as "United" or as "plaintiff."

3. Socony Mobil Oil Co. v. Brooklyn Union Gas Co., 299 F.2d 692, (C.A.5, 1962); Brooklyn Union Gas Co. v. Transcontinental Gas Pipe Line Corp., D.C., 201 F.Supp. 673 (1960).

that when the stay expired all unlawful exactions must be restored. At the time the stay orders were issued, the lawful rates established, by virtue of the Act and the regulations of the Commission, were the contract rates of June 7, 1954. The stay orders did not deal with, or attempt to change, this situation at all. This court did not, indeed could not, authorize an increase in the lawful rates. * * * "

Collection of these unlawful rates was an offense or quasi offense. However, this finding that an offense or quasi offense was committed does not exclude the possibility that a quasi contractual obligation also exists. Plaintiff contends that defendant has received a specific sum of money rightfully belonging to United and that under Article 2301 of the LSA Civil Code and the authority of Kramer v. Freeman, supra, it is entitled to restitution of this money.

Each party seeks to support its position by analogies to a prior decision of this Court in Don George, Inc. v. Paramount Pictures, D.C., 145 F.Supp. 523 (1956). That case concerned an action for treble damages under the Sherman and Clayton Anti-Trust laws which this Court held to be delictual, not contractual, in nature, and thus subject to the one-year prescription of Article 3536. The case of Kramer v. Freeman, supra, was distinguished by stating:

"The clear distinction between that case and this one is readily apparent. There was a suit for restoration of the *specific things* wrongfully acquired, pursuant to Article 2301. Here, by contrast, we have an action for money damages (trebled), which does not seek the return of specific property wrongfully taken from plaintiffs. They sue, instead, for profits which *would* or *might have been* realized, had it not been for defendants' wrongful conduct. In other words, plaintiffs sue, not for the return of property which once was theirs and was wrongfully taken from them by defendants, but for profits which they say *would have been* theirs, but for defendants' monopolistic practices."

The present case cannot be so distinguished from the Kramer case. In fact, it more nearly resembles the Kramer case than the Don George case. Plaintiff does not sue for damages, as the plaintiff did in the Don George case, but sues for the return of a specific sum of money paid to defendant. Plaintiff asserts a special duty owed by defendant which arose when it actually received the excessive rates from United. Only plaintiff can assert the right to a return of the money it paid. This is not the assertion of a general duty owed to all.

Thus the facts as alleged, and as admitted for the purposes of this motion, establish that both a cause of action *ex delicto* and one *ex contractu* exist. To determine which it is that plaintiff asserts the complaint must be examined. Iberville Land Co. v. Amerada Petroleum Corp., 141 F.2d 384, 386 (C.A. 5, 1944):

"* * * Whether this suit is in tort or in quasi contract may only be answered by an analysis of the averments of the bill of complaint descriptive of the cause of action and the character of the relief prayed."

A proper decision can best be reached by examining this case in the light of the rationale underlying each theory upon which relief might be sought. The distinction between quasi contract and quasi offense (tort) was clearly expressed in Schouest v. Texas Crude Oil Co., La. App., 141 So.2d 155, 160 (1962):

"The rationale of the codal articles and jurisprudence governing the right to an action in quasi contract (which includes the right to demand the return of the thing or the value thereof) is prevention of the unjust enrichment which would otherwise accrue in favor of a transgressor by virtue of his receipt and permanent retention of a thing of value belonging to the aggrieved party. Obviously one should not be permitted to

retain and keep an object belonging to another and enjoy the continuous use and benefits to the detriment and deprivation of the lawful owner. Under such circumstances where the object received and retained is capable of restoration equity demands its return or, in the event of its loss or destruction, restitution of the value thereof. On the other hand, however, under the general tort law where the action of a tortfeasor merely causes damage to the property of another, (real or personal), unaccompanied by an appropriation and retention thereof for the exclusive use, benefit and enjoyment of the tortfeasor, the remedy of the injured party is limited and restricted to recovery of damages occasioned by the tortious act."

The complaint filed in this case clearly indicates that plaintiff is seeking recovery of a specific sum of money unlawfully collected by defendant in violation of the Natural Gas Act and the Federal Power Commission order. To allow defendant to retain this sum of money would unjustifiably enrich it, since the excess payments were not due, but rightfully belonged to plaintiff. Thus the tortious action of defendant also created a quasi contractual obligation giving plaintiff the right to demand restitution of the money unlawfully received by defendant. Iberville Land Co. v. Amerada Petroleum Corp., 141 F.2d 384 (C.A. 5, 1944); Kramer v. Freeman, 198 La. 244, 3 So.2d 609 (1941); Tyler v. Walt, 184 La. 659, 167 So. 182 (1936); Schouest v. Texas Crude Oil Co., 141 So.2d 155 (La. App. 1st Cir., 1962); Whitten v. Monkhouse, 29 So.2d 800 (La.App.2d Cir., 1947).

What has been said in this ruling is limited to the questions presented by the pleadings and by the motion to dismiss upon the basis of prescription. It is not a decision upon the merits nor does it in any way indicate a finding by the Court that defendant's conduct was in fact

tortious or that it has been unjustly enriched. What and all that we hold is that plaintiff has alleged a quasi contractual obligation and thus the ten-year prescriptive period is applicable.[4]

The motion to dismiss is Denied.

---

4. This ruling does not reach the issue of whether Louisiana law is applicable to all the payments in issue.